BRUNSWICK CORPORATION, a Delaware corporation, Plaintiff,

Fred Wilson and Rodney Village Shopping Center, Inc., a Delaware corporation, Intervening Plaintiffs,

v.

COLT REALTY, INC., a Maryland corporation; Colt Lanes of Dover, Inc., a Maryland corporation; George E. Banks, III, and John C. Unitas, d/b/a Colt Pinsetters Company, a partnership; and Thaddeus L. Wardwell, Defendants.

Court of Chancery of Delaware.

New Castle.

Jan. 21, 1969.

John P. Sinclair, of Potter, Anderson & Corroon, Wilmington, for plaintiff.

Richard J. Abrams, of Richards, Layton & Finger, Wilmington, for intervening plaintiffs.

William D. Bailey, Jr., of Bayard, Brill & Handelman, Wilmington, for defendants.

DUFFY, Chancellor:

Brunswick Corporation, a Delaware corporation (Brunswick), brought this action against Colt Realty, Inc., a Maryland corporation (Realty), Colt Lanes of Dover, Inc., a Maryland corporation (Dover Lanes), George E. Banks, III (Banks) and John C. Unitas, doing business as Colt Pinsetters Company, a partnership (Colt Partnership), and Thaddeus L. Wardwell. Thereafter, Fred Wilson (Wilson), and Rodney Village Shopping Center, Inc., a Delaware corporation (Rodney Village), intervened as plaintiffs.

A.

Brunswick is engaged in the business of manufacturing and selling bowling equipment. Realty is in the business of leasing real estate to operators of bowling establishments. Dover Lanes operated "Colt Lanes" at the Rodney Village Shopping Center near Dover, Delaware, and those lanes are the subject of the present dispute. Wilson and Rodney Village are the owners of the property on which Colt Lanes were located. The individual defendants were associated with the other defendants.

By a conditional sales contract dated September 1, 1961 Colt Lanes, Inc., bought from Brunswick twenty-four bowling lanes and related equipment and caused them to be installed at Colt Lanes. About December 28, 1962, with Brunswick's consent, Colt Lanes, Inc., transferred its equity under the contract to Dover Lanes, which assumed liability for performance. By another conditional sales contract dated September 1, 1961 Brunswick sold twenty-four pinsetters to the Colt Partnership which then leased them to Dover Lanes. I infer that those pinsetters were installed at Colt Lanes.

About October 13, 1961 Dover Lanes went into possession of the property after negotiations with a person, Max Ambach (Ambach), who is alleged to have had authority to lease it. Those negotiations were apparently embodied in a lease agreement which Dover Lanes says it executed and forwarded to Ambach. But the then owners, Wilson and Ambach, say they never executed the lease. Ambach's interest in the property was later conveyed to Rodney Village. Dover Lanes alleges that it paid moneys for special stylizing of the property, that it spent moneys for improving the alleys and that it entered into possession under the assumption that the lease was in effect. It says that Ambach and Wilson were present when the lanes were opened and that, prior to June 30, 1962, Dover Lanes paid $19,800 representing the stipulated monthly payments of $2,200 called for by the lease. Such payments were presumably made to the landowners.

On July 9, 1962, Realty bought the "leased" property from Wilson and Rodney Village; the sellers took back a second mortgage. Dover Lanes thereafter paid the rentals "pursuant to said lease" to Realty.

In April 1964 Brunswick declared defaults on both conditional sales contracts and demanded payment of the entire balances. In September 1964 Wilson and Rodney Village, as second mortgagees, began foreclosure proceedings against Realty.

The property was sold at public sale on November 23, 1964 to Wilson and Rodney Village; the sale was confirmed thereafter, and on December 10, 1964 the Sheriff deeded the premises to them.

On that same day Wilson and Rodney Village executed a lease of the premises to Brunswick, which immediately entered into possession with the aid of the owners. At about the same time Brunswick repossessed the equipment covered by the conditional sales contracts. Differences arose between the two "sides" because Dover Lanes claimed a right to continue in possession, contending that it was not in default under the lease. The dispute between Brunswick and Dover Lanes, each claiming a right to possession as a lessee, thus led to this lawsuit.

After Brunswick filed its complaint on December 18, 1964, the Court issued a restraining order to prevent interference by Dover Lanes with Brunswick's peaceful possession. By the complaint as amended Brunswick seeks a permanent injunction preventing defendants and their agents from interfering with its peaceful possession of the premises and the property which was subject to the conditional sales contracts.[1] Plaintiff also seeks a money judgment of $63,198.36.

Brunswick filed a motion for summary judgment, and after argument in May 1966 the Court concluded that the lessors (owners) were necessary parties and should be joined. Wilson and Rodney Village then intervened and filed a separate complaint on July 8, 1966. In February 1967, after further discovery, Brunswick and the intervening plaintiffs (plaintiffs hereinafter) jointly renewed the motion for summary judgment. After argument the motion was denied because a material issue of fact existed on Dover Lanes' contention that plaintiffs were estopped to deny the binding effect of a covenant of quiet enjoyment in the alleged lease.

On November 15, 1968 Brunswick moved for an order granting permission to file an amended answer (a "reply" under the rules of Court) to the counterclaim of Dover Lanes, and all plaintiffs moved for summary judgment.[2] Counsel briefed the motions and argued them on December 20.

**B.**

The disputed paragraph in the proposed amendment reads as follows:

"8. If defendant Colt Lanes of Dover, Inc. had any possessory rights in the subject property by virtue of a lease or demise (all of which plaintiff expressly denies), such rights were terminated on or about November 27, 1963 by a default under § 20(A) (6) of said lease when the interests of Colt Lanes of Dover, Inc. in said lease devolved by operation of law upon persons other than Colt Lanes of Dover, Inc. Said devolution by operation of law took place on or about November 27, 1963 when the charter of Colt Lanes of Dover, Inc., a Maryland corporation, was forfeited and proclaimed."

Section 20(A) (6) of the alleged lease provides in pertinent part:

" * * * if this lease or any interest therein shall by operation devolve or pass to any person or persons other than Tenant * * * then * * * * Landlord lawfully may immediately, or at any time thereafter, and without any further notice or demand, terminate this Lease and Tenant shall forthwith quit and surrender the demised premises, * * *."

---

1. There is no attack on the regularity of the foreclosure proceedings nor on the propriety of Brunswick's actions in repossessing equipment covered by the conditional sales contracts.

2. At the same time the intervening plaintiffs moved for leave to file an amended complaint including similar allegations as to proclamation of Dover Lanes' charter. The issues and arguments are discussed in terms of Brunswick but the ruling is equally applicable to the intervening plaintiffs.

Brunswick's purpose is thus to show that (a) the charter of Dover Lanes was proclaimed under Maryland law, and (b) when this occurred its assets passed by operation of law to the corporate directors as trustees, Atlantic Mill & Lumber Realty Co. v. Keefer, 179 Md. 496, 20 A.2d 178 (1941), and (c) such devolution was an act of default under the lease entitling the lessors to immediate possession, Messall v. Merlands Club, Inc., 244 Md. 18, 222 A.2d 627 (1966), who (d) exercised their rights by putting Brunswick in possession.

■ Relying on Chancery Rule 9(a), Del.C.Ann., defendants argue that the issue of devolution has been waived by Brunswick's failure to plead it.[3] Specifically, they say that we are concerned with "an issue as to the legal existence" of a party and by failure to plead Brunswick waived its right to raise the issue. It is true that the motion does seek to raise an issue which involves the legal existence of Dover Lanes and this may be within the literal language of the Rule. But in caption Rule 9(a) deals with "Capacity" and all cases cited in defendants' brief involved capacity or status to maintain an action. I am satisfied that Rule 9(a) is limited to pleading special matters relating to capacity or status to maintain an action and not to "legal existence" as a factual or evidentiary issue of the kind here involved. See, for example, 2A Moore's Federal Practice (2d ed.), § 9.02, and 1A Barron and Holtzoff, Federal Practice and Procedure, § 301.

I conclude that by prior failure to plead Brunswick is not precluded by Rule 9(a) from filing its amended answer. And defendants have not shown any independent grounds for the application of Chancery Rule 12(h).[4]

## C.

Brunswick's motion to amend is made under Chancery Rule 15(a) and, like its Federal counterpart, that rule states: "leave [to amend] shall be freely given when justice so requires." Our Supreme Court has said:

"* * * This rule is written upon the assumption that pleadings are not an end in themselves but are designed to assist, not deter, the disposition of litigation on its merits. Motions to amend the pleadings are always addressed to the discretion of the trial judge. A trial judge in his discretion must always permit or deny the amendment by weighing the desirability of ending the litigation on its merits against possible prejudice or surprise to the other side. See 3 Moore's Federal Practice, 804, 843." Bellanca Corporation v. Bellanca, 3 Storey 378, 169 A.2d 620 (1961).

And as to prejudice one authority states that "* * * it is perhaps no exaggeration to say that the only reason for not allowing an amendment to a pleading is prejudice to the opposing party." Barron and Holtzoff, supra, § 442.

Defendants argue that Brunswick's lack of diligence in raising the issue while the Court expended time and the parties' time and money in moving the case forward show that it is not in the interest of justice to permit the amendment.

■ Since the motion invokes the Court's discretion, the cases cited by both

---

3. Rule 9(a) states in part:
   "(a) Capacity. * * * When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued * * *, he shall do so by specific negative averment, which negative averment shall include such supporting particulars as are peculiarly within the pleader's knowledge."

4. At the times pertinent hereto Rule 12(h) read in part:
   "* * * A party waives all defenses and objections which he does not present either by motion * * * or * * * in his answer or reply * * * [with exceptions not applicable here]."

sides are merely advisory and do not oblige me to take any particular action. Armstrong Cork Co. v. Patterson-Sargent Co., 10 F.R.D. 534 (N.E. Ohio, E.D. 1950). In exercising that discretion I am moved by the desire to see the litigation decided on its merits and to get before the Court all of the facts which will help achieve that objective. The facts as to proclamation of Dover Lanes' charter have some relevancy here and so the Court ought to notice them in the record and/or in evidence. And defendants may well be prejudiced if they come in. But the kind of prejudice is significant. What is to be weighed against the mandate to freely allow amendments? Defendants argue that it is the prejudice to them if the amendment is allowed because it may absolve the lessors of liability under the lease. Their contention, in effect, is that the amendment would very possibly strengthen Brunswick's case and make it less likely that defendants will prevail on the counterclaim. However, such a possibility does not, legally speaking, constitute prejudice and therefore cannot be used as a ground for denying leave to amend. Barron and Holtzoff, supra, § 442; Moore's Federal Practice, supra, § 15.08[4]. But defendants justifiably argue that plaintiffs' lengthy delay in raising this issue has caused them to incur what now must be considered unnecessary investigatory expenses.[5] How is this to be reconciled with the Court's announced purpose to do justice after examining all relevant evidence?

### D.

■ The chronology of this case, outlined above, shows some but not all of the action taken prior to November 15, 1968, when Brunswick filed its motion to amend. There has been, for example, substantial discovery including three depositions of defendant George E. Banks, III. Two motions for summary judgment have been briefed and argued. The case has been fixed for trial on three different dates. And so it has gone. Here I must note, however, that present counsel for all plaintiffs came into the case in recent months and they have proceeded diligently. But an answer to the counterclaim was filed by intervening plaintiffs on September 6, 1966 and by Brunswick on February 10, 1967. And none of the plaintiffs has put anything in the record to explain the delay in making the alleged proclamation of Dover Lanes' charter a matter of pleading. Change of counsel, standing alone, is not an acceptable explanation for the delay. Brunswick makes some argument in its brief about being misled by Mr. Banks in his depositions but it does not say in the record that it was. Indeed it might be inferred from the portion of the depositions quoted in the briefs that Brunswick's counsel knew more about the status of Dover Lanes' charter than Banks did.

■ I conclude that justice is best served by permitting Brunswick to make the amendment in accordance with its motion. In doing so I note that it introduces a relatively simple fact (not thus far disputed) as to what is shown in a public record which will not add to discovery already taken nor delay trial. But plaintiffs have not been diligent and therefore, under the special circumstances of this case, leave will be granted only if plaintiffs agree to compensate defendants for any reasonable expenses which they have incurred (including counsel fees) as a result of plaintiffs' delay. A conditional allowance has a place in the exercise of the Court's discretion under Rule 15. Compare Armstrong Cork Co. v. Patterson-Sargent Co., supra; and see Moore's Federal Practice, supra, § 15.08[6]. This will permit the Court to consider the pertinent facts

5. In their brief defendants say that "it is entirely possible" that the statute of limitations has run and that "action by the proper parties to protect the interest of the corporations is now impossible." I cannot rely on such a limited explanation which does not identify the statute, the parties, nor the action said now to be impossible.

which Brunswick offers and, at the same time, prejudice to defendants will be eliminated by the condition attached to granting of the motion.

### E.

Finally, I turn to plaintiffs' motion for summary judgment, the third time such a motion has been made in this case. The motion is based upon allowance of Brunswick's amended answer and devolution of the lease rights upon the Dover Lanes' directors after proclamation of the charter. Given the age of the case and its halting and uncertain movement through the Court, it is my view that it should go to final hearing as to any factual issues which remain to be tried. This applies whether or not Brunswick accepts the condition I have attached to granting of its motion. Accordingly, I reserve judgment on the motion.