Charles LILLIS, Gary Ames, Richard Post, Frank Eichler, Robert Crandall, Lou Simpson, Pierson Grieve, Richard McCormick, Janice Peters, Pearre Williams, Roger Christensen, Doug Holmes, Steven Boyd, Patti Klinge, Connie Campbell, Sharon O'Leary, Jim Taucher, Bud Wonsiewicz and Daniel Yohannes, Plaintiffs,

v.

AT&T CORP. and AT&T Wireless Services, Inc., Defendants.

C.A. No. 717–N.

Court of Chancery of Delaware, New Castle County.

Submitted: June 20, 2005.
Decided: Aug. 26, 2005.

Josy W. Ingersoll, Danielle Gibbs, Young Conaway Stargatt & Taylor, L.L.P., Wilmington, DE; Miranda S. Schiller, Joshua S. Amsel, Weil, Gotshal & Manges, L.L.P., New York City, for the Plaintiffs.

Todd C. Schiltz, Wolf, Block, Schoor and Solis–Cohen, L.L.P., Wilmington, DE; Robert D. Owen, Glen Banks, Fulbright & Jaworski, L.L.P., New York City, for Defendant AT&T Corp.

Kenneth J. Nachbar, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Michael L. Banks, William P. Quinn, Morgan Lewis & Bockius, L.L.P., Philadelphia, PA, for Defendant AT&T Wireless Services, Inc.

### MEMORANDUM OPINION AND ORDER

LAMB, Vice Chancellor.

### I.[1]

#### A. *Background*

The plaintiffs, former owners of options to purchase shares in AT&T Wireless Services, Inc. ("Wireless"), bring this suit against Wireless and AT&T Corp., seeking to be compensated for the value of their options, which were canceled when Wireless merged with Cingular Wireless Corporation. The plaintiffs formerly were officers and directors of MediaOne Group, Inc., a broadband telecommunications company, or of U S WEST, Inc., the former parent corporation of MediaOne, that AT&T purchased. Pursuant to the Amended MediaOne Group, Inc. 1994 Stock Plan (the "1994 Plan"), and as part of their compensation, the plaintiffs received stock options (the "MediaOne Options") from MediaOne and/or U S West.

After AT&T acquired MediaOne, AT&T exchanged the MediaOne Options for new options in AT&T (the "AT&T Options"), which had an equivalent value to the MediaOne Options. When AT&T spun off Wireless, its former subsidiary, the AT&T Options were adjusted, and the plaintiffs were granted new options in both (the new, smaller) AT&T and in Wireless (the "Wireless Options"). The Wireless Options (like all previous options) were partly in-the-money and partly out-of-the-money.

The plaintiffs allege that the out-of-the-money Wireless Options were rendered worthless as a result of the Cingular/Wireless merger. Specifically, upon exercise, the Wireless Options were converted to the right to receive the consideration Cingular paid for the Wireless common stock. Unexercised Wireless Options were then canceled.[2] Obviously, out-of-the-money options went unexercised and were canceled for no consideration.

The plaintiffs contend that the MediaOne Options, and therefore the Wireless Options, were governed by four sepa-

---

1. Unless otherwise noted, the facts recited in this opinion are taken from the well-pleaded allegations of the complaint.

2. While the complaint states that the Wireless Options were canceled, Wireless disputes this fact. There is no dispute, however, that the securities underlying the Wireless Options no longer exist. As this distinction, if it exists, is immaterial to the disposition of this motion, the court refers to the options being "canceled" as short-hand, without deciding this issue.

rate agreements, and that the cancellation of their out-of-the-money Wireless Options violated these agreements.[3] This contention centers on the 1994 Plan, paragraph XVIII(A), which provides that, in the event of

> "any consolidation, combination, ... recapitalization, ... split-off, spin-off, combination of shares, exchange of shares or other like change in capital structure, the number or kinds of shares or interests subject to an Award and the per share price or value thereof shall be appropriately adjusted ... at the time of such event, provided that each Participant's economic position with respect to the Award shall not, as a result of such adjustment, be worse than it had been immediately prior to such event."

The plaintiffs argue that this paragraph of the 1994 Plan requires AT&T and/or Wireless to compensate them for the loss of their out-of-the-money Wireless Options and that such compensation should be equal to the economic value of all of their Wireless Options before the Cingular/Wireless merger, minus any cash payment received in the merger.[4]

The reason this is so, they say, is that in connection with the MediaOne/AT&T Merger Agreement, AT&T agreed that it, and its subsidiaries (including Wireless), would "honor the terms of all ... MediaOne Benefit Arrangements," defined to include the 1994 Plan, and that no changes to the 1994 Plan would be made unless expressly permitted by its terms. The plaintiffs contend that this is exactly what happened in the MediaOne/AT&T merger and in the spin-off of Wireless from AT&T.

When AT&T acquired MediaOne, the plaintiffs received the AT&T Options, which, they contend, were equivalent in value to the MediaOne Options they surrendered. Similarly, in June of 2001, when AT&T spun-off Wireless, AT&T and Wireless granted the plaintiffs the Wireless Options, and the adjusted AT&T options. According to documents Wireless filed with the SEC, the value of this mix of options was "intended to retain the same intrinsic value of the options immediately before and after the adjustment." In fact, the complaint alleges that AT&T credited Wireless with over $200 million of additional value at the time of the spin-off to ensure that Wireless would honor AT&T's obligation to the option holders.

B.  *The Defendants' Answers*

In its answer, AT&T broadly admits many of the allegations contained in the complaint. Below are just some of the numerous admissions of AT&T in its answer:

- Paragraph 2 admits that "AT&T expressly promised to preserve the value of the Options, including in connection with future mergers or changes in control, in connection with its acquisition of MediaOne."

- Paragraph 3 admits that "cancellation of the Options would leave the option holder in a worse off position."

- Paragraph 5 admits that "Both AT&T and Wireless assured Plaintiffs that the new Wireless Options would continue to be governed by the 1994 Plan and the Individual Agreements."

3.  In addition to the 1994 Plan, the plaintiffs contend that the Wireless Options are governed by the plaintiffs' individual MediaOne Group, Inc. Non–Qualified Stock Option Agreements (the "Individual Agreements"), the Agreement and Plan of Merger between MediaOne and AT&T, dated May 6, 1999, and certain of the plaintiffs' individual Change of Control Agreements with MediaOne.

4.  Cingular is a privately-held company. Thus, the entire consideration in the Wireless/Cingular merger was cash.

- Paragraph 7 admits that "Wireless (i) had an obligation to preserve the value of the options it had granted if Wireless chose to pursue any merger or other extraordinary transaction and (ii) Wireless took action that affected the value of the Plaintiffs' options."
- Paragraph 34 admits that "Defendants believed that Plaintiffs' Options—even Plaintiffs' out-of-the-money Options—had significant value."

In contrast to AT&T, Wireless's answer admits nothing of consequence. Instead, it denies *knowledge* of many of the substantive factual allegations in the complaint. The court discusses the relevance of such denials below.

### C. *The Rule 12(c) Motion And The Defendants' Responses*

After receiving the defendants' answers, the plaintiffs moved for judgment on the pleadings, pursuant to Rule 12(c). In its answering brief, AT&T again admitted many of the allegations in the complaint. A few of these numerous admissions are repeated below.

- "AT&T intended that the Option Exchange preserve the value held by the holders of AT&T options so that that value was not adversely impacted by AT&T's split-off of Wireless. As Plaintiffs note in their Complaint, Wireless's registration statement filed with the SEC acknowledged that Wireless assumed a portion of the obligation AT&T had to its option holders and that AT&T gave consideration with a value of approximately $200 million to Wireless to take on that obligation." [5]
- "AT&T took steps, including giving Wireless consideration with a value of approximately $200 million, to ensure Wireless would preserve the value of the Adjusted Wireless Options after the split-off, when Wireless would be an independent company and no longer under the control of AT&T." [6]
- "AT&T agrees with the Plaintiffs that Wireless acted improperly when it merged with Cingular and did not take action to preserve the value held by the holders of the Adjusted Wireless Options. AT&T agrees with Plaintiffs that in taking such action Wireless did not fulfill its contractual obligations to the holders of the Adjusted Wireless Options." [7]

The gist of AT&T's argument, in its answering brief, is to admit that the Wireless Options have value and that Wireless's action reduced or destroyed that value, but argue that Wireless, not AT&T, is responsible for any loss.

In its answering brief, Wireless argues, among other things, that it has no contractual relationship with or duty to the plaintiffs under the 1994 MediaOne Plan or any other agreement, and, that while AT&T may have some liability to the plaintiffs, it has none. It also argues, based on the content of its answer, there are numerous issues of fact that must be construed in its favor on the Rule 12(c) motion that preclude entry of judgment in favor of the plaintiffs. For example, Wireless denies the allegation in the complaint that the plaintiffs owned any MediaOne options or were ever employed by MediaOne. Taking these denials as true would prevent the entry of judgment in favor of the plaintiffs in the current procedural posture.

The difference in approach taken by AT&T and Wireless, is best shown by the

---

5. AT&T's Answering Br. at 2.

6. *Id.* at 3–4.

7. *Id.* at 9.

fact that AT&T initiated an arbitration against Wireless, pursuant to the contract governing the spin-off, demanding "that if Wireless's merger with Cingular were consummated, Wireless should be required to compensate the holders of the Adjusted Wireless Options for the value of their options immediately prior to the announcement of the merger." In the arbitration, AT&T sought over $200 million in restitution.

### D. AT&T's Volte–Face

On June 9, 2005, five days before the court heard oral arguments on the Rule 12(c) motion, AT&T filed a letter with the court (the "Reversal Letter"), in which AT&T purports to "correct an argument" in its answering brief. In fact, the Reversal Letter attempts to take back many of the damaging admissions AT&T made in its answer and its brief. In the Reversal Letter, AT&T now argues for the first time that it is not, in fact, liable for the decrease in value to the Wireless Options because Article XVII of the 1994 Plan, not Article XVIII, upon which the plaintiffs rely, governs this dispute.

Article XVII of the 1994 Plan provides, in relevant part:

> Upon the occurrence of a Change of Control:
>
> A. in the case of all outstanding Options and SARs, each such Option and SAR shall automatically become immediately fully exercisable by the Participant unless the Committee shall otherwise determine at the time such Option or SAR is granted as set forth in the respective grant Agreement[.]

The Reversal Letter argues that the Cingular/Wireless merger is a "change of control" within the meaning of Article XVII and is not a "consolidation, combination ... recapitalization" etc. within the meaning of Article XVIII. Thus, the argument goes, Article XVII, and only Article XVII, governs the dispute between AT&T and the plaintiffs. Under Article XVII, the only right the plaintiffs had was the immediate vesting of their Wireless Options. Since their Wireless Options were already vested, AT&T argues that Wireless (and therefore AT&T itself) was not required to take further action with respect to those options.

The reason for AT&T's *volte face* was not hard to discern. On June 7, 2005, just two days earlier, counsel for Wireless forwarded to the court a copy of the May 23, 2005 decision of the arbitral tribunal (the "Arbitration Decision").[8] In the Arbitration Decision, the arbitral tribunal found for Wireless, and denied AT&T recovery. The arbitral tribunal found that, under the terms of the AT&T/Wireless agreement, Wireless was not required to preserve the value of any underwater options that AT&T and/or Wireless granted in the Spin–Off.[9]

### F. Oral Arguments

Neither counsel for the plaintiffs nor counsel for Wireless received the Reversal Letter before oral argument. As a result, those counsel were understandably unprepared to respond at argument to the issues raised in the Reversal Letter. Thus, not only were counsel for the plaintiffs and Wireless deprived of their opportunity to

---

8. *AT&T Corp. v. AT&T Wireless Services, Inc.,* (CPR) (Dodyk, Pratt, & Martin, Arbs. May 23, 2005).

9. As it is not referenced in either the answers or the complaint, the Arbitration Decision is not properly before the court on a Rule 12(c) motion. As such, the court only relies on it in deciding whether to grant AT&T leave to amend its answer.

make oral arguments on the substantive arguments in the Reversal Letter, but the court was also deprived of the benefits of those arguments.

In the interest of fairness, the court granted leave to the plaintiffs and Wireless to submit additional papers. In their additional submission, the plaintiffs argue that the admissions in an answer to a complaint constitute judicial admissions that are binding on AT&T.[10] The plaintiffs also pointed out that AT&T had not (at that point) requested leave to amend its answer. On the same day, the plaintiffs filed their letter brief, June 20, 2005, AT&T filed a motion to file an amended answer.

Moreover, even though the court had not granted it leave, and even though the original Reversal Letter was itself not filed in conformity with the court's briefing schedule order, AT&T filed another letter with the court opposing the Rule 12(c) motion arguing in favor of the motion for leave to amend. Counsel for the plaintiffs again wrote to the court and rightly noted that the court had not granted leave to counsel for AT&T to make any additional filing and asked that it be stricken.

Now pending before the court are the plaintiffs' Rule 12(c) motion and AT&T's motion to amend its answer. The court first addresses AT&T's motion because the disposition of the motion for leave to amend AT&T's answer bears importantly on the court's review of the motion for judgment on the pleadings.

## II.

### A. The Applicable Standard

AT&T argues that a motion to amend an answer is governed by Rule 15(a), which provides that "[a] party may amend the party's pleading ... by leave of [the] Court ... and leave shall be freely given when justice so requires." Generally, the standard for granting leave to amend pleadings under Rule 15(a) is very permissive.[11] However, "[a] motion for leave to amend a complaint is always addressed to the discretion of the trial court. While leave to amend should be granted freely when justice requires it, it is always, however, a discretionary matter with the trial judge...."[12] The plaintiffs contend that the motion to amend should be denied since it is motivated solely by a tactical decision, citing *Trans World Airlines, Inc. v. Summa Corp.*[13]

Before addressing *Summa Corp.*, the court first notes that Rule 15(aaa), which imposes a quite restrictive standard on certain motions for leave to amend, is

---

**10.** However, judicial admissions apply only to admissions of fact, not to theories of law, such as contract interpretation. *Levinson v. Del. Comp. Rating Bureau, Inc.*, 616 A.2d 1182, 1186 (Del.1992); *Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466, 474 (Del.1989). Moreover, AT&T is not barred from changing its position under the doctrine of judicial estoppel because this court did not rely on AT&T's argument in a decision. *See, e.g., Siegman v. Palomar Med. Techs.*, 1998 WL 409352, at *3, 1998 Del. Ch. Lexis 115, at *11 (Del.Ch. July 13, 1998) ("Judicial estoppel prevents a litigant from advancing an argument that contradicts a position previously taken by that same litigant, *and that the Court was persuad-*

ed to accept as the basis for its ruling.") (emphasis added).

**11.** *See, e.g., Fox v. Christina Square Assoc.*, 1995 WL 405744, at *2, 1995 Del. Ch. Lexis 89, at *5 (Del.Ch. June 19, 1995) ("A party should be granted leave freely to amend its complaint, unless there is evidence of bad faith, undue delay, dilatory motive, undue prejudice or futility of amendment.").

**12.** *Bokat v. Getty Oil Co.*, 262 A.2d 246, 251 (Del.1970).

**13.** 394 A.2d 241 (Del.Ch.1978).

not applicable in the context of a motion by a plaintiff for judgment on the pleadings. Rule 15(aaa), which is distinctive to Delaware practice, applies in the case of "a motion to dismiss under Rules 12(b)(6), 12(c) or 23.1." While the plaintiffs have moved under Rule 12(c), they have not moved to dismiss. Moreover, since their motion seeks a judgment affording to them the affirmative relief sought in the complaint, there is no sense in which the court could consider their motion as one "to dismiss."

■ Shortly after Rule 15(aaa) was adopted, in *Stern v. LF Capital Partners*, this court took the opportunity to examine its scope and purpose in the context of a motion to amend a complaint.[14] "The purpose of that rule was to eliminate (or at least sharply curtail) instances in which this court is required to adjudicate multiple motions to dismiss the same action."[15] Rule 15(aaa) is designed to accomplish that objective by requiring a party, when confronted by a motion to dismiss pursuant to any of Rules 12(b)(6), 12(c) or 23.1, to elect either to stand on its pleadings and respond to the motion or, instead, to amend or seek leave to amend its pleadings before the response to the motion is due.[16] In the context of a motion to amend a complaint, Rule 15(aaa) enforces this requirement by providing that, if a plaintiff chooses to file an answering brief in opposition to a motion to dismiss rather than amend the complaint, any subsequent dismissal pursuant to the motion "shall be with prejudice unless the Court for good cause shown shall find that dismissal with prejudice would not be just under all the circumstances."[17]

Although it would seem true that some of the same concerns that prompted the court to adopt Rule 15(aaa) are present in this case where AT&T stood on its answer when it filed its brief in opposition, the language of the rule makes it clear that it does not apply in this case. Thus, the court turns to *Summa Corp.*

In *Summa Corp.*, the defendants sought relief from an order entered one year earlier that granted partial summary judgment to the plaintiff on the basis of a clear set of admissions by the defendants. While the defendants argued that the earlier admissions were the product of a mistake from which they should be accorded relief, the court denied the motion, stating, as follows:

> I am of the opinion that the type of mistake contemplated by [Rule 60(b)] does not include a tactical mistake of competent counsel made in the course of conduct of a case entrusted to his discretion.

The plaintiffs here seize on this language, asking the court to deny leave to amend AT&T's answer as a mere manifestation of a change in litigation tactics by that corporation. While the court is sympathetic to the plaintiffs, who have been put to a large effort and expense pursuing the Rule 12(c) motion on the basis of the positions taken by AT&T, Rule 15(c) provides that leave to amend "shall be freely given when justice so requires." Here, the larger interest of justice requires that the matter should be resolved on its merits, not on the basis of admissions made by AT&T that it now wishes to withdraw.[18]

---

14. 820 A.2d 1143, 1143–44 (Del.Ch.2003).

15. *Id.* at 1143.

16. *Id.*

17. *Id.* at 1143–44.

18. *See, e.g.,* Bellanca Corp. v. Bellanca, 169 A.2d 620, 622 (Del.1961) ("[Rule 15] is written upon the assumption that pleadings are not an end in themselves but are designed to assist, not deter, the disposition of litigation on its merits.").

■ While the court concludes that it should grant AT&T's motion to amend, it will not do so unconditionally. In its answer and its brief in opposition to the Rule 12(c) motion, AT&T made an irrefutably deliberate choice to admit the substance of the plaintiffs' claim (including adopting the plaintiffs' interpretation of the 1994 Plan) but pointed the finger at Wireless as the party obligated to make the plaintiffs whole. Based on AT&T's numerous admissions, the plaintiffs made a good faith decision that they were entitled to judgment on the pleadings and moved for such under Rule 12(c). They, undoubtedly, incurred substantial expense in briefing and arguing that motion. That effort and expense will be largely wasted if AT&T is allowed to amend its answer.

A conditional allowance is within the court's discretion under Rule 15.[19] In exercising that discretion, the court concludes that the plaintiffs should not be forced to bear the cost of AT&T's procedural maneuvering. Therefore, the proper outcome is to grant AT&T leave to amend its answer, conditioned upon AT&T paying the reasonable legal fees and costs that the plaintiffs incurred in bringing their Rule 12(c) motion. Pending the court's receipt of notice of AT&T's decision to pay the plaintiffs' fees and costs, the court will defer decision on the Rule 12(c) motion with respect to AT&T.

### III.

The court will now address the Rule 12(c) motion directed at Wireless.

#### A.  *Standard On Rule 12(c) Motion*

■■ In determining a motion under Rule 12(c), a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party.[20] A motion for judgment on the pleadings may be granted only when no material issue of fact exists and the movant is entitled to judgment as a matter of law.[21]

#### B.  *Wireless*

■ The plaintiffs allege that Wireless was contractually required by the 1994 Plan to maintain the value of the Wireless Options and that, due to the Wireless/Cingular merger, Wireless violated that duty. Therefore, in order to grant the plaintiffs' Rule 12(c) motion, the court must answer in the affirmative two questions. First, was Wireless contractually bound to maintain the value of the Wireless Options? Second, did the Wireless/Cingular merger render the Wireless Options worthless, or at least reduce their value? In answering these questions, the court must view the facts pleaded in the complaint and Wireless's answer in the light most favorable to Wireless.

The plaintiffs allege that Wireless was contractually obligated by the 1994 Plan to maintain the value of the Wireless Options. In its answer, Wireless denies this allegation.

On the face of the document, Wireless was not a party to the 1994 Plan. It was not, in fact, formed as an entity until July of 2001. Therefore, in order to be bound by the 1994 Plan, Wireless must have adopted it in some way. There are two plausible ways this could have happened. First, Wireless could have adopted the 1994 Plan by contract. The complaint does not allege that any such contract exists, and it does not attach any such

**19.** *Brunswick Corp. v. Colt Realty, Inc.,* 253 A.2d 216, 220 (Del.Ch.1969).

**20.** *Id.*

**21.** *Id.*

contract. The complaint refers, in general terms, to the agreement between AT&T and Wireless with respect to the Spin–Off. However, the plaintiffs do not reference, or attach to the complaint, any specific documents whereby Wireless adopted the 1994 Plan.

Second, in the series of mergers and spin-offs at issue in this case, the legal obligations of MediaOne could have devolved upon Wireless as a matter of law. Again, however, the plaintiffs have not adduced any incontrovertible documentary evidence that this is true.

It is quite possible that during discovery, the plaintiffs could discover documentation proving that Wireless adopted, and is bound by, the 1994 Plan. However, on their Rule 12(c) motion, the plaintiffs have failed to prove that this is so. Therefore, the plaintiffs' motion on the pleadings with respect to Wireless must be dismissed.[22]

### IV.

For the foregoing reasons, the plaintiffs' Rule 12(c) motion with respect to Wireless is DENIED. AT&T's motion for leave to amend its answer is, conditionally, GRANTED. AT&T is ordered to inform the court within 10 days of the date of this opinion whether it will pay the plaintiffs' legal fees and costs in connection with the Rule 12(c) motion. Pending such notification, the court's decision on the plaintiffs' Rule 12(c) motion with respect to AT&T is deferred. IT IS SO ORDERED.

---

**22.** Because the court finds that the plaintiffs have not adduced sufficient evidence that Wireless is bound to the 1994 Plan, it is unnecessary to address whether the plaintiffs have adduced sufficient proof that the Wireless reduced the value of the Wireless Options.