# SUPERIOR COURT
# OF THE
# STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted:  September 27, 2021
Date Decided:  October 1, 2021

Michael K. Hurt, Esq.
Eliyahu Ness, Esq.
Lynn Pinker Hurst & Schwegmann
2100 Ross Avenue, Suite 2700
Dallas, TX 75201

Patricia A. Winston, Esq.
Barnaby Grzaslewicz, Esq.
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

Patrick J. Curran, Jr., Esq.
Anora Wong, Esq.
Davis Wright Tremaine LLP
1301 K Street, NW, Suite 500 East
Washington, D.C. 20005

Frederick L. Cottrell, III, Esq.
Steven J. Fineman, Esq.
Tyler E. Cragg, Esq.
Richards, Layton & Finger PA
920 North King Street
Wilmington, DE 19801

John M. Magliery, Esq.
Davis Wright Tremaine LLP
1251 Avenue of the Americas
New York City, NY 10020

RE:  *MVC Capital Inc., et al. v. U.S. Gas & Electric, Inc., et al.*
      C.A. No. N20C-07-062 PRW CCLD

Dear Counsel:

This Letter Order addresses the Defendants' Motion to Amend the Answer and Counterclaims (D.I. 50).  For the reasons below, the Motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff MVC Capital, Inc. was the majority owner of U.S. Gas & Electric, Inc. ("USG&E").[1] In 2017, MVC and USG&E entered a Merger Agreement with Defendant Verengo, Inc.[2] The result of the merger is that USG&E became a wholly owned subsidiary of Verengo.[3] The Merger Agreement recognized Verengo as the "Buyer" and MVC as the "Seller."[4] MVC and James Wiser were also recognized as the "Holder Representatives,"[5] the authorized representatives of the former USG&E shareholders.

The Merger Agreement included several provisions on indemnification. Section 9.1, titled "Indemnified Legal Proceedings," provided that the Company Holders would indemnify the Buyers "for any Liabilities relating to or arising from the matters set forth on Schedule 9.1(a)(iii)."[6] Section 9.1(a)(iii) incorporated by reference an unsettled investigation by the New York Attorney General's Office

---

[1] Defs.' Mot. to Amend Answer and Counterclaims at ¶ 2.

[2] *Id.*

[3] *Id.*

[4] Compl., Ex. A at 1 (D.I. 1).

[5] *Id.*

[6] *Id.* § 9.1(a)(iii).

("NYAG") into the marketing practices of certain USG&E subsidiaries.[7]

Section 9.3 governed "Direct Claims," which are claims for indemnification by one party (the "Indemnified Party") directly against another party (the "Indemnifying Party").[8]  Among other things, Section 9.3 required that the Indemnified Party provide the Indemnifying Party with a written Claim Notice describing the claim and the facts giving rise to it.[9]  Section 9.3 did "not apply with respect to a claim made by a Person that is not a Buyer Indemnified Party or a Holder Indemnified Party (any such Person, a 'Third Party Claimant') against an Indemnified Party, which claims are governed by Section 9.4."[10]

Section 9.4 governed "Third Party Claims."[11]  In relevant part, Section 9.4 provided that (1) the Indemnified Party must promptly notify the Indemnifying Party upon receiving a Claim Notice from a Third Party Claimant;[12] (2) the Indemnifying

---

[7]  *Id.*; *see* Defs.' Mot. to Amend Answer and Counterclaims at ¶¶ 2–3.

[8]  Compl., Ex. A § 9.3(a).

[9]  *Id.*

[10]  *Id.* § 9.3(c).

[11]  *Id.* § 9.4(a).

[12]  *Id.* § 9.4(a).

Party has the right to defend the Third Party Claim if it so chooses;[13] (3) whichever party defends the Third Party Claim must keep the other party apprised of the status of the defense;[14] and (4) if the Indemnified Party defends a Third Party Claim, it may not settle without the consent of the Indemnifying Party.[15]

After the merger, Verengo defended the NYAG Action.[16] In July 2019, Defendant Vistra Energy Corp. acquired Verengo and USG&E.[17] Ultimately, the NYAG Action settled for $1.95 million in October 2019.[18] Shortly thereafter, Vistra sent MVC and Wiser a letter entitled "Notice of Merger Agreement Indemnification Claim Notice."[19] The letter stated that it was "a Claim Notice pursuant to Sections 9.1(a)(iii) and 9.3(a)" in respect to the NYAG Action, which it identified as a "specifically scheduled indemnifiable claim under Section 9.3(a)(iii)."[20] The letter

---

[13]  *Id.* § 9.4(b).

[14]  *Id.* § 9.4(c).

[15]  *Id.*

[16]  Defs.' Mot. to Amend Answer and Counterclaims at ¶ 5.

[17]  *Id.*

[18]  *Id.*

[19]  *Id.*

[20]  Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims, Ex. A; *see also* Defs.' Mot. to Amend Answer and Counterclaims at ¶ 5.

stated that the Holder Representatives "will pay (or will be deemed to pay) to Buyer an aggregate amount equal to $2,074,124.12" in accordance with "Section 9.3(b) and the definition of Pro Rata Sharing Event."[21]

MVC and Wiser disagreed with Vistra's interpretation of the Merger Agreement and filed the Complaint on July 27, 2020. They seek a declaratory judgment that the NYAG settlement created a Third Party Claim under the Merger Agreement, that Defendants failed to comply with the requirements of Section 9.4, and that Defendants "are not entitled to any sums from the Legacy Escrow Account or to set off against any amounts due under the Seller Notes."[22] The Complaint also brings claims for breach-of-contract.[23] Defendants filed the Answer and Counterclaims in August 2020.[24] On July 20, 2021, Defendants filed the present Motion to Amend the Answer and Counterclaims. The Court heard earlier this week and took the matter under advisement.[25]

---

[21] Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims, Ex. A.

[22] *See* Compl. at ¶¶ 72–79.

[23] *See id.* at ¶¶ 80–106.

[24] Defs.' Answer and Counterclaims (D.I. 11).

[25] D.I. 57.

## II. THE MOTION

Defendants "seek to amend their Answer and Counterclaim to clarify their positions as to the interpretation of the indemnification provisions."[26]  Plaintiffs oppose only the proposed amendments to Paragraphs 42 and 43 of the Answer.[27]

### A. PROPOSED AMENDMENT TO PARAGRAPH 42 OF THE ANSWER

Paragraph 42 of the Complaint alleges that:

> The first October 18, 2019 communication was entitled Notice of Merger Agreement Indemnification Claim Notice (the "New York Indemnification Demand").  In it, Vistra, on behalf of the Buyer Indemnified Parties, wrote that "this Notice constitutes a Claim Notice pursuant to 9.1(a)(iii) and 9.3(a) of the Merger Agreement in respect of Item III . . . set forth on Schedule 4.9 (and incorporated by reference into Schedule 9.1(a)(iii) of the Merger Agreement)."[28]

Defendants admitted the allegation in the Answer.[29]  Now, Defendants state that they "only intended to admit the undisputed fact that a letter was sent on October 18,

---

[26]  Defs.' Mot. to Amend Answer and Counterclaims at ¶ 1.

[27]  *See* Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶¶ 4–8.  Before argument, the Court understood Plaintiffs to also oppose the proposed amendments to Paragraphs 45 and 46.  *See id.* at ¶ 7 ("Several of the remaining proposed amendments involve the Defendants' recent attempt to reclassify the October 18, 2019 letter as something other than an 'Indemnification Demand.'") (citing Defs.' Mot. to Amend Answer and Counterclaims, Ex. A at ¶¶ 45–46).  But at argument, Defendants represented, without contradiction, that Plaintiffs now only oppose the amendments to Paragraphs 42 and 43.  So the Court limits discussion here to just those two.

[28]  Compl. at ¶ 42.

[29]  Defs.' Answer and Counterclaims at ¶ 42.

2019, but **not** Plaintiffs' couched legal conclusion that the letter served as an 'Indemnification Demand.'"[30]   They therefore "seek to correct what might be construed (albeit incorrectly) as an admission that the October 2019 Notice was an 'Indemnification Demand.'"[31]  The proposed amendment reads as follows:

> Defendants deny that the October 18, 2019 letter titled "Notice of Merger Agreement Indemnification Claim Notice" was an "Indemnification Demand;" no demand for indemnification was required for the NY AG Action as it was already an Indemnified Legal Proceeding under the Merger Agreement.  Defendants admit the remaining allegations of paragraph 42.[32]

At argument, Defendants reiterated that their only issue is with the label Plaintiffs created to describe the letter (*i.e.*, "Indemnification Demand").

### B. PROPOSED AMENDMENT TO PARAGRAPH 43 OF THE ANSWER

Paragraph 43 of the Complaint alleges that:

> The New York Indemnification Demand sought a right to a liquidated sum of $2,074,124.12 in connection with USG&E's settlement with the New York Attorney General resolving the New York Claim.[33]

---

[30]   Defs.' Mot. to Amend Answer and Counterclaims at ¶ 8 (emphasis in original).

[31]   *Id.*

[32]   *Id.*, Ex. A at ¶ 42.

[33]   Compl. at ¶ 43.

Defendants admitted the allegation in the Answer.[34] Now, Defendants explain that they "merely intended to admit that the October 2019 Notice notified the Defendants of the occurrence of a Pro Rata Sharing Event of $2,074,124.12, a fact that is apparent from the October 2019 Notice."[35] However, they "did **not** intend to admit, counterfactually, that the October 2019 was a 'demand' or that it 'sought a right.' The right to indemnification for the NYAG Action was already sought and granted in executing the Merger Agreement."[36] The proposed amendment reads as follows:

> Defendants deny that the October 18, 2019 letter titled "Notice of Merger Agreement Indemnification Claim Notice" was an "Indemnification Demand;" no demand for indemnification was required for the NY AG Action as it was already an Indemnified Legal Proceeding under the Merger Agreement. Defendants deny that the October 18, 2019 letter "sought a right" to indemnified losses resulting from settlement of the NY AG Action as the Defendants already had that right pursuant to the Merger Agreement. Defendants deny that the October 18, 2019 letter "sought" a "liquidated sum of $2,074,124.12;" instead, the letter: (1) notified Defendants of the occurrence of a Pro Rata Sharing Event, (2) [sic] the method by which Buyer would allocate responsibility for $2,074,124.12 in indemnified Buyer Losses between the Legacy Holder Representative's Legacy Escrow account and reduction of the principal amount outstanding under the Seller Notes, as required by the Merger Agreement, and (3) requested that the Legacy Holder Representative sign a joint written instruction for the release of

---

[34] Defs.' Answer and Counterclaims at ¶ 43.

[35] Defs.' Mot. to Amend Answer and Counterclaims at ¶ 9.

[36] *Id.* (emphasis in original).

> $216,059.09 from the Legacy Escrow account. Defendants deny the remaining allegations of paragraph 43.[37]

As with Paragraph 42, Defendants emphasized at argument that their only issue is with how Plaintiffs characterize the letter in the Complaint.

## III. STANDARD OF REVIEW

Civil Rule 15(a) governs how and when parties may amend their pleadings. It provides that leave to amend a pleading "shall be freely given when justice so requires."[38] Delaware "freely allows amendment in all but the most limited circumstances."[39] Thus, "[i]n the absence of prejudice to another party, the trial court is required to exercise its discretion in favor of granting leave to amend."[40]

While Delaware courts "generally grant motions to amend liberally," it "is not automatic."[41] Denial is proper where there's "evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies,

---

[37] *Id.*, Ex. A at ¶ 43.

[38] Del. Super. Ct. Civ. R. 15(a).

[39] *Ferrari v. Helmsman Mgmt. Servs., LLC*, 2020 WL 3444106, at *7 (Del. Super. Ct. June 23, 2020).

[40] *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993) (citing *Ikeda v. Mollock*, 603 A.2d 785, 787–88) (Del. 1991)).

[41] *AluminumSource, LLC v. LLFlex, LLC*, 2021 WL 1997893, at *1 (Del. Super. Ct. May 19, 2021).

prejudice, futility, or the like."[42] "Delay alone is not a sufficient basis to deny amendment of the pleadings, although inexcusable delay and repeated attempts at amendment may justify denial."[43]

## IV. LEGAL ANALYSIS

Plaintiffs suggest four reasons why the Court should prohibit the proposed amendments: (1) undue delay;[44] (2) bad faith;[45] (3) judicial admissions doctrine;[46] and (4) undue prejudice.[47] The Court will examine each in turn.

### A. THE DOCTRINE OF JUDICIAL ADMISSIONS IS NOT IMPLICATED HERE.

Plaintiffs argue that the Answer contained a judicial admission "that the October 18, 2019 letter was a claim notice"[48] and that the proposed amendments attempt to "make [a] contradictory representation."[49] This should not be allowed,

---

[42] *Parker v. State*, 2003 WL 24011961, at *3 (Del. Super. Ct. Oct. 14, 2003) (internal citations omitted).

[43] *Id.* (internal citations omitted).

[44] *See* Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶¶ 11–13.

[45] *See id.* at ¶¶ 14–20.

[46] *See id.* at ¶¶ 21–24.

[47] *See id.* at ¶¶ 25–27.

[48] Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶ 21.

[49] *Id.* at ¶ 24.

Plaintiffs say, unless Defendants "make an absolute demonstration . . . that under no circumstances could . . . the admission be true."[50] And, Plaintiffs say, Defendants have made no such demonstration.[51]

Judicial admissions are "[v]oluntary and knowing concessions of fact made by a party during judicial proceedings," which might include statements in pleadings.[52] They "are traditionally considered binding upon the party against whom they operate, and upon the court."[53] They apply only to admissions of fact and not theories of law.[54]

Plaintiffs misapprehend the proposed amendments. They are correct that the Answer admitted the October 18, 2019 letter was a "claim notice."[55] But the

---

[50] *See id.* at ¶¶ 23–24 (quoting *Bon Ayre Land LLC v. Bon Ayre Community Ass'n*, 2015 WL 893256, at *6) (Del. Super. Ct. Feb. 26, 2015)).

[51] *Id.* at ¶ 24.

[52] *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201 (Del. 2008).

[53] *Id.* at 1201–02.

[54] *See Levinson v. Delaware Compensation Rating Bureau Inc.*, 616 A.2d 1182, 1186 (Del. 1992) ("This Court has held that judicial admissions which are binding on the tendering party are limited to factual matters in issue and not to statements of legal theories or conceptions.") (internal quotations and citations omitted); *see also Lillis v. AT&T Corp.*, 896 A.2d 871, 877 n.10 (Del. Ch. 2005) ("[J]udicial admissions apply only to admissions of fact, not to theories of law, such as contract interpretation.").

[55] *See* Defs.' Answer and Counterclaims at ¶¶ 41, 45.

proposed amendments admit that too.[56]  And at argument, Defendants emphasized that they do not deny that the letter constituted a claim notice.  The Plaintiffs misconstrue the amendments as a "judicial about-face"[57] on this issue.  This point of clarity appears to resolve most or all of Plaintiffs' issues with amendments; as Plaintiffs told the Court earlier this week: "If they're willing to stick with that admission [that the October 18, 2019 letter constituted a claim notice for indemnity], we're fine."  For the sake of completeness, though, the Court must attend to the remainder of Plaintiffs' arguments.

To conclude on judicial admissions, the Court notes that the amendments do not introduce new facts.  Instead, they relate to Defendants' position about how the Merger Agreement is to be interpreted.  Because the amendments relate to a theory of law (*i.e.*, contract interpretation), the judicial admissions rule doesn't apply.

### B. NO UNDUE PREJUDICE IS DEMONSTRATED.

Plaintiffs argue that permitting Defendants to amend their Answer would prejudice them.  Plaintiffs claim they "were not on notice of Defendants' new theory

---

[56]   *See* Defs.' Mot. to Amend Answer and Counterclaims, Ex. A at ¶ 41 ("Defendants admit that by letters dated October 18, 2019, Vistra sent an indemnification payment demand and a claim notice to the Company Holder Representatives."); *see id.* at ¶ 45 ("Defendant admits that . . . the October 18, 2019 letter . . . constituted a claim notice for indemnity payments.").

[57]   *See* Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶ 21.

that Vistra's demand for indemnification in the October 18, 2019 New York Indemnification Demand was not in fact a demand for indemnification."[58] Had they known, they "would have issued different discovery requests" while document discovery was ongoing.[59] When pressed for details, Plaintiffs explained that the Answer had led them to believe the case turned on whether Vistra's claim was a Direct Claim or a Third Party Claim. If they had known that Defendants believe the Merger Agreement allows a "third way" for certain claims, they would have focused their discovery on that issue. Finally, Plaintiffs protest that Defendants have done nothing to show that moving forward with their pleadings as-is would cause them any hardship.[60]

"Amendments to the pleadings are liberally allowed unless serious prejudice to the opposing party will result."[61] That is, the nonmoving party (here, MVC and Wiser,) must show prejudice.[62] And, when considering a motion for leave to amend,

---

[58] Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶ 26.

[59] *Id.*

[60] *Id.* at ¶ 25.

[61] *See Apogee Investments, Inc. v. Summit Equities LLC*, 2017 WL 4269013, at *4 (Del. Ch. Sept. 22, 2017) ("The nonmoving party must show 'undue or demonstrable prejudice or a bad faith motive by the moving party.'") (quoting *Gotham Partners v. Hallwood Realty*, 1999 WL 1022069, at *1 (Del. Ch. Oct. 18, 1999)).

[62] *Id.* (internal quotations and citations omitted).

the Court "balance[s] the hardship encountered by the moving party if such motion is denied against the prejudice suffered by the adverse party if such motion is granted."[63]

Here, Plaintiffs have not shown that they would suffer undue or even demonstrable prejudice if the Motion were granted. Again, Defendants are not pleading new facts; rather they are elaborating upon their theory of contract interpretation.[64] Too, the Court notes that Plaintiffs were never able to identify specifically how the proposed amendments undermine past discovery or why the remaining discovery period is insufficient.[65] But the Court is willing to take Plaintiffs at their word and ameliorate whatever difficulties they face through measures described at the conclusion of this order.

---

[63] *Wilson v. Wilson*, 2005 WL 14792, at *1 (Del. Super. Ct. Jan. 14, 2005).

[64] *See AluminumSource, LLC v. LLFlex, LLC*, 2021 WL 1997893, at *1 (Del. Super. Ct. May 19, 2021) (declining to find that proposed amendments would prejudice the defendant partly because amendments "pled no new facts"); *First State Orthopaedics, P.A. v. Liberty Mutual Ins. Co.*, 2020 WL 6875219, at *6 (Del. Super. Ct. Nov. 20, 2020) (declining to find that proposed amendments would prejudice the defendants because the amendments "did not aver new factual allegations or new substantial legal questions").

[65] This Court has declined to find prejudice to parties opposing amendment where those parties fail to convincingly explain just how they are unduly prejudiced by amendment. *See Price v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 4478665 (Del. Super. Ct. September 13, 2012); *Delta Eta Corp. v. Univ. of Delaware*, 2007 WL 4578278, at *6 (Del. Super. Ct. Dec. 27, 2007).

## C. No Bad Faith Is Evident.

Plaintiffs ask the Court to deny the Motion on account of bad faith. Plaintiffs say the Answer admitted that the October 18, 2019 letter was an "Indemnification Demand" and that Defendants now seek to deny that.[66] Plaintiffs argue that Defendants are not attempting to correct a mistake in good faith, but rather attempting to present an entirely new set of facts about the letter.[67] This is particularly egregious, they say, because Defendants were aware of its contents when they filed the Answer and because no facts have come to light that justify the Defendants changing their position.[68] Plaintiffs add that the real reason why Defendants filed the Motion is that they retained new counsel in March 2021.[69]

Plaintiffs have not shown bad faith. It is crucial to identify both what the proposed amendments seek to change and what they do not seek to change. The relevant paragraph in the Complaint reads as follows:

---

[66] Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶ 15.

[67] *Id.* at ¶ 17.

[68] *Id.* at ¶ 15.

[69] *Id.* at ¶ 18. At argument, Defendants acknowledged that their change of counsel was a factor in filing the Motion. But Defendants added that this was not the only factor; they also hope to clarify their position before the filing of any dispositive motions.

> The first October 18, 2019 communication was entitled Notice of Merger Agreement Indemnification Claim Notice (the **"New York Indemnification Demand"**). In it, Vistra, on behalf of the Buyer Indemnified Parties, wrote that "this Notice constitutes a Claim Notice pursuant to 9.1(a)(iii) and 9.3(a) of the Merger Agreement in respect of Item III . . . set forth on Schedule 4.9 (and incorporated by reference into Schedule 9.1(a)(iii) of the Merger Agreement)."[70]

This paragraph alleges two facts: (1) that "the first October 18, 2019 communication was entitled Notice of Merger Agreement Indemnification Claim Notice"; and (2) that the letter contained the quoted language. Defendants admit those facts in both the Answer and the proposed amendments.[71] The amendments do not change Defendants' position about the facts of the letter, as they emphasized at argument.

Instead, the amendments relate to the letter's significance under the Merger Agreement. It is not a fact that the letter was an "Indemnification Demand;" that is a label that the Plaintiffs created in the Complaint as a shorthand reference to the letter. And as the Complaint makes clear, Plaintiffs believe that this label is legally significant.[72] Therefore, the amendments clarify that Defendants did not accept Plaintiffs' implicit legal conclusions when they admitted the underlying facts.

---

[70] Compl. at ¶ 42 (emphasis added).

[71] *See* Defs.' Mot. to Amend Answer and Counterclaims, Ex. B at ¶ 42.

[72] *See* Compl. at ¶ 46 ("The Buyer Indemnified Parties had never sent any prior Claim Notice respecting the New York Claim to the Company Holder Representatives, which would have been required for any indemnification demand."); *see id.* at ¶ 47 ("However, Defendants were well

Plaintiffs call out *Krauss v. State Farm* to support their argument of bad faith.[73] In that case, plaintiffs Krauss and Linehan were traveling in a car driven by Krauss but owned by Linehan when an accident caused them to suffer injuries. Krauss filed a claim for benefits with State Farm, his insurer, but State Farm denied his claim. Krauss and Linehan sued State Farm for benefits, alleging in the complaint that they both "qualify as insureds under the Krauss policies and each have fulfilled any and all conditions precedent required for payments sought."[74] Unbeknownst to Krauss and Linehan, that statement constituted a judicial admission that Linehan was a member of Krauss' household under the terms of Krauss' policy, which had the effect of disqualifying him from coverage.[75] Accordingly, State Farm moved to dismiss. Krauss tried to avoid dismissal by moving to amend the complaint to remove Linehan's averments. The court denied him leave to amend because "under the particular circumstances of this case, to do so would permit him to abuse

---

aware that a Claim Notice was a required predicate to any indemnification demand for Third Party Claims, as evidenced by the second letter send [sic] to Company Holder Representatives.").

[73] *See* Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶ 20 ("Defendants' attempt to manipulate this litigation through amendment of their Answer when they possessed all of the relevant facts at the time the Answer was filed is evidence of bad faith.") (citing *Krauss v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 2830889, at *6 (Del. Super. Ct. Apr. 23, 2004)).

[74] *Krauss*, 2004 WL 2830889, at *2.

[75] *See id.* at *3.

the pleading process and to plead a set of contradictory facts."[76]  Krauss had made a "calculated and tactical decision" to file jointly with Linehan and thereby "facilitate their joint and mutual interest in obtaining the largest insurance recovery possible."[77] Thus, "[a]llowing Plaintiffs to amend their complaint to aver contradictory facts, as opposed to averring a newly discovered fact or an alternative theory of the case, would be an attempt to 'manipulate the course of litigation.'"[78]

*Krauss* is distinguishable from the current case.  As explained, Defendants are not introducing new or contradictory facts, unlike the plaintiffs in *Krauss*.  Too, Defendants are not abusing the pleading process because they did not file the Motion as a ploy to avoid an impending dispositive motion against them.  At bottom, the ruling in *Krauss* was a product of the "particular circumstances of [that] case,"[79] which made bad faith obvious.  Such circumstances are not present here.[80]

---

[76]  *Id.* at *6.

[77]  *Id.* at *7.

[78]  *Id.*

[79]  *Krauss*, 2004 WL 2830889, at *6.

[80]  *See E.J. Deseta HVAC Servs., Inc. v. Conaty*, 2005 WL 1950799, at *2 (Del. Super. Ct. July 29, 2005) (distinguishing *Krauss* because the facts of *Krauss* presented clear evidence of bad faith).

Second, Plaintiffs cite *Menn v. Conmed* as a "decision that permitted the defendant to change admissions in an answer to denial only because new information had been obtained through discovery."[81]  But *Menn* appears to favor Defendants, not Plaintiffs.  In *Menn*, the defendants initially admitted an allegation that they later sought to amend.  The defendants explained that they intended to admit the "discrete fact" that the alleged event had occurred while disputing the plaintiff's "characterization" of the event, which carried implicit legal conclusions.[82]  The court granted them leave to amend.[83]  There, as here, the court was persuaded to grant leave partially because plaintiffs had not suffered prejudice.[84]

## D. UNDUE DELAY

Plaintiffs also imply that, because they sought these amendments nearly 11 months after filing their Answer, Defendants' request should be denied for undue delay.[85]  Plaintiffs insist:  when "[n]o factual information has changed; the only

---

[81]  Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶ 19 (citing *Menn v. Conmed Corp.*, 2019 WL 925848 (Del. Ch. Feb. 25, 2019)).

[82]  Defs.' Combined (I) Reply in Further Support of Their Mot. to Amend their Answer and (II) Opp'n to Pls.' Mot. to Strike, *Menn v. Conmed Corp.*, 2019 WL 806486 (Del. Ch. Feb. 15, 2019).

[83]  *Menn*, 2019 WL 925848, at *2.

[84]  *See id.* ("Plaintiff's ability to seek discovery concerning the amended allegations ameliorates any prejudice resulting from the timing of the amendments.").

[85]  Pls.' Opp'n to Defs.' Mot. to Amend Answer and Counterclaims at ¶ 13.

change is that Defendants have substituted new lead counsel" the delay here dooms Defendants' attempt to amend.[86]

No one disputes that as a "general rule . . . a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent."[87] Defendants could have—perhaps, should have—sought amendment sooner. But "[d]elay alone is not a sufficient basis to deny amendment of the pleadings."[88] And the delay in seeking these first-time changes does not appear—again, Plaintiffs suffer no real prejudice and no bad faith is evident.[89] "Accordingly, with just the passage of time and no prejudice to the [Plaintiffs]," the proposed amendments are "not untimely."[90]

Delaware "freely allows amendment in all but the most limited circumstances."[91] Plaintiffs have not persuaded the Court that this is one of those circumstances.

---

[86] *Id.*

[87] *Hess v. Carmine*, 396 A.2d 173, 177 (Del. Super. Ct. 1978).

[88] *Parker*, 2003 WL 24011961, at *3 (internal citations omitted).

[89] *See id.* ("[I]nexcusable delay and repeated attempts at amendment may justify denial.").

[90] *First State Orthopaedics, P.A. v. Liberty Mutual Ins. Co.*, 2020 WL 6875219, at *6 (Del. Super. Ct. Nov. 20, 2020).

[91] *Ferrari, LLC*, 2020 WL 3444106, at *7.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Amend the Answer and Counterclaims is **GRANTED**. As the Court noted at our hearing, the parties are to confer and agree upon a reasonable expansion of both the time and scope of any additional discovery needed to address the amended Answer and counterclaims. The Court expects the parties will work cooperatively and in good faith to propound and complete any additional discovery required so as to not disturb the schedule of other events in the Case Management Order.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary

cc: All Counsel via File and Serve