COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted:   September 28, 2021
Draft Report:       January 2, 2022
Final Report:       June 15, 2022

John A. Sergovic, Jr., Esquire
Sergovic Carmean Weidman McCartney & Owens, P.A.
25 Chestnut Street
P.O. Box 751
Georgetown, Delaware 19947

Mary R. Schrider-Fox, Esquire
Steen, Waehler & Shrider-Fox, LLC
92 Atlantic Avenue, Unit B
P.O. Box 1398
Ocean View, Delaware 19970

RE:    *Gerald N. Smernoff, Trustee Under the Gerald N. Smernoff Revocable Trust Dated May 24, 2000 and Myrna M. Smernoff, Trustee Under the Myrna M. Smernoff Revocable Trust Dated May 24, 2000 v. The King's Grant Condominium Association, Inc. and Council of King's Grant Condominium*
C.A. No. 2020-0798-PWG

Dear Counsel:

Pending before me is a dispute between owners of a condominium unit and the condominium association regarding who is responsible for repairing and/or replacing water damaged exterior windows, doors and walls in the owners' unit. The owners argue that the exterior windows, doors and walls are common elements and the obligation to repair and/or replace them falls on the association, while the association contends that the condominium's governing documents assign the duty

to repair or replace all windows and doors on the owners. First, I address the issue of whether this Court has subject matter jurisdiction over this matter and conclude that it does. Next, I consider the parties' cross-motions for summary judgment and recommend that the Court deny both motions, because I find that material issues exist concerning whether exterior windows and doors are common elements and that it is desirable to inquire more fully into the facts to apply the law to the circumstances in the case. This is a final report.

## I. BACKGROUND

*A. Factual Background*

Plaintiffs Gerald Smernoff and Myrna Smernoff, Trustees under the Gerald N. Smernoff and Myrna M. Smernoff Revocable Trusts dated May 24, 2000 ("Smernoffs"), own Unit 15 of Building C ("Unit 15") at the King's Grant Condominium ("Condominium"), located at 15 King's Grant, Fenwick Island, Delaware.[1] The Smernoffs bought Unit 15 in June of 1994.[2] The Condominium was created in the mid-1980s.[3] Defendants, the King's Grant Condominium Association, Inc. and the Council of King's Grant Condominium (collectively, "HOA"), are the Condominium's unit owners association and the board of individuals tasked with managing the Condominium's business operations and

---

[1] Docket Item ("D.I.") 1, ¶¶ 1-2; D.I. 14, ¶ 10; D.I. 16, ¶ 4.

[2] D.I. 16, Ex. A, ¶ 1.

affairs on behalf of the unit owners.[4]  The Condominium's governing documents include the Code of Regulations for King's Grant Condominium Documents ("COR") and the Declaration of Condominium Submitting Real Property to Provisions of the Unit Property Act, 25 Del. C. Section 2201, *et seq.* King's Grant Condominium ("Declaration"), which incorporates the Declaration Plan for King's Grant Condominium ("Declaration Plan") (collectively, "Governing Documents").[5] The HOA operates under the Governing Documents, which specifically submit the Condominium to the Unit Property Act ("UPA"), 25 *Del. C.* §2201, *et seq.*[6]

On November 14, 2014, George, Miles & Buhr, LLC performed a water test on the north entry door and glass wall of Unit 15 ("Window") and found, in a report dated January 28, 2015, that there was water leakage around the Window and recommended replacing the sealant around the Window.[7]

The Smernoffs requested that the HOA repair or replace the Window, asserting that it is a common element and the HOA's responsibility to repair under

---

[3] *Id.*, ¶ 5; D.I. 1, Ex. 1 [hereinafter "Decl."].

[4] D.I. 16, ¶ 1; *see also* D.I. 1, Ex. 3 [hereinafter "COR"], §3.2.

[5] *See* Decl., §§3.01(G), 4.07, 22.01; D.I. 1, Ex. 2; COR.

[6] D.I. 16, ¶ 1; Decl., §1.01; COR, §1.1.

[7] D.I. 1, Ex. 4.  The Report indicated that a "longer lasting solution would be to install sill plans beneath the base of each window, however that would involve the removal and reinstallation of each window." *Id.*

the Governing Documents.[8]  The HOA took the position that it is the Smernoffs'

duty to repair or replace the Window under the Declaration.[9]  This dispute

escalated, and settlement efforts were unsuccessful.[10]

## B.    *Procedural Background*

The Smernoffs filed the Complaint on September 18, 2020, seeking specific

performance of the HOA's duty to repair under the Governing Documents and a

declaratory judgment establishing that the exterior windows, doors and walls of

Unit 15 and all similar units within the Condominium are common elements under

the Declaration and required to be repaired or replaced by the HOA.[11]  The HOA

answered on October 20, 2020, disputing that it was obligated to repair or replace

the Window.[12]

On April 9, 2021, the Smernoffs moved for summary judgment ("Motion"),

arguing that the Declaration unambiguously denotes exterior-facing windows and

doors as common elements and they are entitled to judgment as a matter of law.[13]

On May 10, 2021, the HOA opposed the Motion and filed a cross-motion for

summary judgment ("Cross-Motion"), arguing that the Declaration was

---

[8] D.I. 7, ¶ 14.

[9] D.I. 1, Ex. 5.

[10] *See id.*, Ex. 5.

[11] D.I. 1.

[12] D.I. 7.

unambiguous in favor of the HOA and it was entitled to judgment as a matter of law.[14] On May 25, 2021, the Smernoffs filed their Reply, opposing the Cross-Motion.[15]

On August 12, 2021, the Court raised *sua sponte* the issue of its subject matter jurisdiction, citing a similar dispute requesting specific performance against a homeowner's association.[16] On September 13, 2021, the parties submitted simultaneous statements on the issue of subject matter jurisdiction.[17] On September 28, 2021, the Smernoffs filed a statement of supplemental authority, citing recent legislative changes to the Delaware Uniform Common Interest Ownership Act ("DUCIOA").[18]

On January 2, 2022, I issued a draft master's report ("Draft Report"), in which I concluded, based upon a stipulation by the parties that the Window was a common element under the Declaration, that the HOA was responsible for the maintenance and replacement of the Window as a common expense.[19] Both parties

---

[13] D.I. 14.

[14] D.I. 16.

[15] D.I. 17.

[16] D.I. 18 (citing *Bennett v. Plantations E. Condo. Ass'n* [hereinafter "*Bennett*"], 2010 WL 3065228 (Del. Ch. July 22, 2010)).

[17] D.I. 19; D.I. 20.

[18] D.I. 21.

[19] D.I. 22.

filed exceptions to my Draft Report.[20] In their exceptions, the HOA argued that I improperly interpreted the Governing Documents to place the burden on the HOA to maintain and replace the Window and that the Declaration intended the unit owner to be responsible for exterior windows attached to their unit.[21] The Smernoffs asserted that the HOA should be required to replace the Window in the original architectural style, and asked that their request for attorneys' fees be considered at this juncture.[22]

## II.   ANALYSIS

### A.   *This Court has Jurisdiction Over All Claims*[23]

The Court raised *sua sponte* the issue of subject matter jurisdiction, citing to *Bennett v. Plantations East Condominium Association* ("*Bennett*"),[24] in which the Court dismissed for lack of subject matter jurisdiction a dispute between a property owner and a homeowner's association regarding who should make repairs related to a water leak.[25]

---

[20] D.I. 23; D.I. 24.

[21] D.I. 28; D.I. 29.

[22] D.I. 27; D.I. 31.

[23] No exceptions were taken to this subject matter jurisdiction analysis in the draft report, and I adopt this analysis as my final report with minor changes.

[24] 2010 WL 3065228 (Del. Ch. July 22, 2010).

[25] D.I. 18.

"The Court has a duty to determine whether it has subject matter jurisdiction over a plaintiff's claims and can raise the issue *sua sponte*."[26] "The burden is on the plaintiff to prove subject matter jurisdiction exists."[27] "As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[28] "In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[29] "The analysis requires a realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available or fully adequate."[30] Where the plaintiff has pled a traditional

---

[26] *Crown Castle Fiber LLC v. City of Wilmington*, 2021 WL 2838425, at \*3-4 (Del. Ch. July 8, 2021) (citations omitted); *see also* Ct. Ch. R. 12(h)(3); *Envo, Inc. v. Walters*, 2009 WL 5173807, at \*4 n. 10 (Del. Ch. Dec. 30, 2009), *aff'd*, 2013 WL 1283533 (Del. Mar. 28, 2013).

[27] *Sun Life Assurance Co. of Canada - U.S. Operations Hldgs., Inc. v. Grp. One Thousand One, LLC*, 206 A.3d 261, 265 (Del. Super. 2019).

[28] *Endowment Rsch. Grp., LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at \*6 (Del. Ch. Mar. 5, 2021) (internal quotation marks and citations omitted).

[29] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citations omitted).

[30] *Endowment Rsch. Grp., LLC*, 2021 WL 841049, at \*6 (internal quotation marks and citation omitted).

basis for equitable jurisdiction, such as specific performance, equitable jurisdiction will be found "only if the complaint, objectively viewed, discloses a genuine need for such equitable relief."[31]

The Smernoffs argue that this Court has subject matter jurisdiction and that *Bennett* is distinguishable because the *Bennett* plaintiffs were primarily seeking money for property damage not involving a common element and did not raise specific performance as a possible remedy in its pleadings.[32] The Smernoffs further assert that their declaratory judgment claim involves the adjudication of rights that are cognizable in this Court.[33] The HOA contends that *Bennett* is on point.[34] It argues that, like the homeowner's association in *Bennett*, it has no "special expertise" that would make the Smernoffs entitled to specific performance and, if a breach is found, that damages will make the Smernoffs whole.[35] The HOA acknowledges that the declaratory judgment claim may fall within this

---

[31] *Candlewood Timber Grp., LLC*, 859 A.2d at 997; *see also Crown Castle Fiber LLC*, 2021 WL 2838425, at *4; *Athene Life & Annuity*, 2019 WL 3451376, *4 (Del. Ch. July 31, 2019).

[32] D.I. 19, at 2-3 (citing *Bennett*, 2010 WL 3065228, at *2 (Del. Ch. July 22, 2010)).

[33] *Id.*, at 5. The Smernoffs also argue that this Court has jurisdiction based on the HOA's breach of its fiduciary duty to repair or replace the Window. *Id.*, at 7-9. Because I find that subject matter jurisdiction exists on other grounds, I do not address that argument.

[34] D.I. 20, at 1-2.

[35] *Id.*, at 2.

Court's jurisdiction, but alleges there is no pending controversy related to the declaratory judgment claim.[36]

I find this Court has subject matter jurisdiction over these claims. The Smernoffs seek specific performance, an equitable remedy, based on the HOA's alleged duty to repair the Window.[37] Although the *Bennett* Court dismissed a similar claim based upon a duty to repair found in deed restrictions, the *Bennett* plaintiffs did not plead equitable relief.[38] Instead, they sought monetary damages and only argued the possibility of specific performance in summary judgment briefs.[39] Here, the Smernoffs' specific performance claim, unlike in *Bennett*,[40] is not merely a façade to confer equitable jurisdiction, and falls within this Court's subject matter jurisdiction.

Additionally, the declaratory judgment claim provides a basis for this Court's jurisdiction. "[D]eclaratory judgment actions involving the validity, applicability, and interpretation of land use restrictions are normally cognizable in

---

[36] *Id.*, at 3-4 (citation omitted).

[37] D.I. 1, ¶¶ 31-39.

[38] *Bennett*, 2010 WL 3065228, at *2 (Del. Ch. July 22, 2010)).

[39] *Id.*

[40] *Id.*, 2010 WL 3065228, at *2 ("Therefore, the [plaintiffs'] suggestion at oral argument that specific performance is available as a jurisdictional 'hook' is unpersuasive.").

this Court."[41]  This action seeks an interpretation of the Governing Documents, and

is cognizable in this Court.  The HOA, though, argues that there is no real

controversy because it has admitted that the exterior windows, doors, and walls of

all units in the Condominium are common elements.[42]  For an actual controversy to

exist, four elements must be satisfied:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[43]

The first and second prongs are satisfied because the declaratory judgment claim

here seeks an interpretation of the Governing Documents, to which the Smernoffs

and the HOA are bound.[44]  The third prong is met because the Smernoffs and the

HOA have taken adverse positions whether the duty to repair common elements

contained within the Governing Documents applies to the Window and what that

---

[41] *Heathergreen Commons Condo. Ass'n v. Paul*, 503 A.2d 636, 645 (Del. Ch. 1985); *see also Capano v. Draper Subdivision Ass'n, Inc.*, 2019 WL 3938704, at *9 n. 113 (Del. Ch. Aug. 20, 2019).

[42] D.I. 20, at 4.

[43] *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (citation omitted).

[44] D.I. 1, ¶¶ 41-47.

duty entails.[45] The final prong of this analysis is satisfied because there is also a claim of a breach of that duty,[46] making this controversy more than "advisory or hypothetical."[47] Thus, the declaratory judgment claim falls within this Court's subject matter jurisdiction.

**B.    *The Parties' Cross-Motions for Summary Judgment are Denied***

   1.  Standard of Review

Under Court of Chancery Rule 56, the Court may grant a motion for summary judgment when "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[48] The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[49] Evidence must be

---

[45] *Compare* D.I. 16, ¶¶ 22-32 (HOA's position that the language in §11.03(e) of the Declaration requires that the Smernoffs are responsible for their own window and door repairs even if those windows and doors are common elements) *with* D.I. 14, ¶¶ 33-38 (Smernoffs' position that the Window is a common element and the HOA is bound to repair and/or replace common elements).

[46] D.I. 1, ¶¶ 31-39.

[47] *XI Specialty Ins. Co.*, 93 A.3d at 1217 (citation omitted); *see also Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476, 480 (Del. 1989).

[48] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd* 692 A.2d 411 (Del. 1997).

[49] *Wagamon*, 2012 WL 1388847, at *2; *Ludeen v. Pricewaterhousecoopers, LLC*, 2006 WL 2559855, at *2 (Del. Super. Aug. 31, 2006).

viewed "in the light most favorable to the non-moving party."[50]   Summary judgment may not be granted when material issues of fact exist or if the Court determines that it "seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[51]   When the Court is presented with cross-motions for summary judgment, the Court may "deem the motions to be the equivalent of a stipulation for decision."[52]

### 2. Contentions

The Smernoffs argue that there is no material factual dispute and they are entitled to judgment as a matter of law because the HOA has admitted that exterior windows, doors and walls are common elements, and the Governing Documents and the UPA compel the HOA to maintain, repair and replace common elements.[53] The HOA responds that Section 11.03(e) of the Declaration controls and requires unit owners to repair, replace, and maintain "windows and door [sic] in such unit."[54]   It asserts that, in the Condominium's history, there has been a consistent understanding that Section 11.03(e) of the Declaration required unit owners to

---

[50] *Williams v. Geier*, 671 A.2d 1368, 1375-76 (Del. 1996) (citing *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 8401, 844 (Del. 1987)).

[51] *Id.*, at 1388-89; *see also Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962); *In re Estate of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (citation omitted).

[52] Ct. Ch. R. 56(h).

[53] D.I, 14, ¶¶ 29-38; *see also* D.I. 17, ¶¶ 12-14.

[54] D.I. 16, ¶¶ 26-32.

repair, replace, and maintain the exterior windows and doors of their respective units.[55] The HOA further argues that the Delaware Supreme Court's decision in *Council of Dorset Condominium Apartments v. Gordon* ("*Dorset*"),[56] is controlling based on that Court's conclusion that similar language made individual unit owners responsible for repairing, replacing, and maintaining exterior doors and windows.[57] In reply, the Smernoffs contend that *Dorset* is not on point because, in that dispute, the exterior windows were not common elements under that condominium's declaration.[58]

### 3. Applicability of the Unit Property Act

I begin the analysis with the UPA.[59] The UPA has been described as "generally an enabling statute, allowing the allocation of rights and obligations within the condominium community."[60] Its provisions must be followed by a property submitted under it, like the Condominium, since the UPA "establishes the

---

[55] *Id.*, ¶ 22; *see also* D.I. 7, at 22.

[56] 801 A.2d 1 (Del. 2002).

[57] D.I. 16, ¶¶ 19-21.

[58] D.I. 17, ¶ 12.

[59] *See Goss v. Coffee Run Condo. Council*, 2003 WL 21085388, at *9 (Del. Ch. Apr. 30, 2003) (citing *Council of Unit Owners of Pilot Point Condo. v. Realty Growth Investors*, 436 A.2d 1268, 1278 (Del. Ch. 1981), *aff'd in part*, 453 A.2d 450 (Del. 1982)).

[60] *Id.*, at *8.

rights and interests that govern th[ose] propert[ies]."[61]    The UPA defines a

"Common Expense" to include "[e]xpenses of administration, maintenance, repair

and replacement of the common elements."[62]    The UPA further places the burden

of "[t]he maintenance, repair and replacement of the common elements" on the

HOA.[63]      First, I consider whether the Window is a common element.[64]    Section

---

[61] *Id.*, at *9 n. 42 (quoting *Council of Unit Owners of Pilot Point Condo.*, 436 A.2d at 1278); *see also* Decl. §1.01; COR, §1.1 (submitting the Condominium under the UPA); *id.*, §15.06 ("This Code of Regulations shall, to all reasonable extent be deemed to be consistent with and supplementary to the provisions of the [Unit Property] Act."). I consider briefly whether the UPA or DUCIOA controls for the Condominium. The Condominium is a pre-existing community under DUCOIA, since it was submitted to the UPA in 1985. *See* Decl.; 25 *Del. C.* §81-116. And, recent amendments to DUCOIA make clear that for all pre-existing communities, "existing provisions of those declarations, bylaws, codes of regulations, declaration plans, plats or plans … not in conflict with the UPA (Chapter 22 of this title), shall be controlling in the event of any express conflict between those existing provisions (as duly amended) and the provisions of this chapter." 25 *Del. C.* §81-119. So, this matter is properly considered under the UPA and not DUCOIA.

[62] 25 *Del. C.* §2202(4)(a).

[63] 25 *Del. C.* §2211(1).

[64] In my Draft Report, I relied upon the parties' apparent stipulation that the Window was a common element in concluding that, as a common element, the maintenance and replacement of the Window was the HOA's responsibility and a common expense under the UPA. *See* D.I. 22, at 14-20; *see also* D.I. 1, ¶14; D.I. 14, ¶ 30; D.I. 16, ¶¶ 10, 23; D.I. 20, at 4. Upon further review, although the parties apparently stipulated that the Window was a common element, I find that I need not accept this as a judicial admission because it is a legal conclusion. "Voluntary and knowing concessions of fact made by a party during judicial proceedings …. are termed 'judicial admissions.'" *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201 (Del. 2008); *see also Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 2022 WL 619700, at *10 (Del. Mar. 3, 2022), *reargument denied* (Mar. 22, 2022) ("[The judicial admission] doctrine does not apply to admitted legal conclusions."). But, "[w]hen counsel speaks of legal principles he makes no judicial admission which would prevent the court from applying the facts disclosed by proof." *Blinder, Robinson & Co. v. Burton*, 552 A.2d 466, 474 (Del. 1989) (cleaned up); *see also BE & K Eng'g Co.,*

14

2202(3) of the UPA does not clearly specify whether the Window is a common element.[65] To determine whether the Window falls "within the category of common elements or [is] otherwise covered as a common expense, [the Court] must look to the language of the [Governing Documents]."[66] When analyzing the Governing Documents, I apply the principles of contract interpretation to ascertain the parties' intent.[67] "The proper construction of [a contract] … is purely a question of law, as is the proper interpretation of specific contractual language."[68] Contracts are read "as a whole …, so as not to render any part of the contract mere

---

*LLC v. RockTenn CP, LLC*, 2014 WL 186835, at *7 (Del. Ch. Jan. 15, 2014), *aff'd*, 103 A.3d 512 (Del. 2014) (Mem.). Here, the issue of whether the Window is a common element under the Governing Documents is a matter of contract interpretation and a question of law. *OSI Sys., Inc. v. Interumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006) ("Under Delaware law, the proper interpretation of language in a contract, while analytically a question of fact, is treated as a question of law.") (cleaned up). Therefore, the Court may reject the parties' apparent stipulation that the Window is a common element and conduct a contract interpretation analysis. *See Lillis v. AT&T Corp.*, 896 A.2d 871, 877 n. 10 (Del. Ch. 2005).

[65] 25 *Del. C.* §2202(3).

[66] 801 A.2d 1, 5 (Del. 2002).

[67] *See Goss v. Coffee Run Condo. Council*, 2003 WL 21085388, at *7 (Del. Ch. Apr. 30, 2003); *see also Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) ("When interpreting a contract, the role of a court is to effectuate the parties' intent.").

[68] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *10 (Del. Ch. July 6, 2018) (internal quotation marks and citations omitted) (ellipses in original), *reh'g denied,* 2018 WL 5994971 (Del. Ch. Nov. 13, 2018).

surplusage" or to "render a provision or term 'meaningless or illusory.'"[69] The

Court "ascribes to the words their common or ordinary meaning, and interprets

them as would an objectively reasonable third-party observer."[70] And, "a court is

precluded from resorting to extrinsic evidence to interpret contractual language

which is plain and clear on its face."[71]

The Declaration defines what is a common element and what is part of an

individual unit.[72] The Declaration defines the "Unit" as:

> The vertical boundaries of each unit are that the lowermost elevation
> is the top surface of the lowermost subfloor and the uppermost
> elevation is the interior side of the roof ridge at the highest point of
> the roof. The highest point of the unit is the lower surface of the
> highest roof rafters or trusses. The horizontal boundaries of each unit
> as to depth and width are the space between the interior face of the
> wall studs.[73]

"Common Elements shall consist of all portions of the Property except the Units,"

including structures and installations "outside of the unit boundaries.[74] However,

Section 11.03(e) of the Declaration places the responsibility on the unit owner "to

---

[69] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (internal quotation marks and citations omitted); *see also Ray Beyond Corp. v. Trimaran Fund Mgmt., LLC*, 2019 WL 366614, at *5 n. 62 (Del. Ch. Jan. 29, 2019).

[70] *Lawhon v. Winding Ridge Homeowners Ass'n, Inc.,* 2008 WL 5459246, at *6 (Del. Ch. Dec. 31, 2008) (internal quotation marks and citations omitted).

[71] *Goss*, 2003 WL 21085388, at *7 (citation omitted).

[72] *See also* 25 *Del. C.* §2219(5).

[73] Decl., §3.01(O).

maintain, repair, and replace ... all non-load bearing interior walls, floors and partitions and windows and door in such unit."[75]

Based on the summary judgment record, a question remains whether the Window falls within the Declaration's definition of "Unit."[76] Further, I find there is ambiguity whether the Window is a common element, since the Governing Documents can be interpreted as showing that windows are a common element or, in the alternative, as evidencing an intent that windows attached to a unit be treated as part of the unit and not as part of the common elements.[77] The Declaration gives unit owners' responsibility for maintaining and repairing "windows ... in such unit."[78] If the windows in a unit are common elements, then the phrase "in such unit" is potentially rendered meaningless because the Declaration defines "common element" and "unit" as exclusive of the other.[79] Because I find that material issues exist concerning whether the Window is a common element and it is desirable for the Court to inquire more fully into the facts to clarify how to apply

---

[74] Decl., §4.05(I).  The Declaration also lists various features that fall within this definition "[w]ithout limited the generality" of the definition. *Id*.

[75] Decl., §11.03(e).

[76] *See* Decl., §3.01(O).

[77] The Smernoffs argued in their exceptions brief that the Declaration Plan clearly classifies exterior windows, like the Window, as common elements. D.I. 31, at 7.  I do not find the Declaration Plan's common element designation clear as it applies to exterior windows since it does not depict windows separately.

[78] Decl., §11.03(e).

the law in this case, I conclude that summary judgment is not appropriate, and recommend that this matter proceed to trial on these issues.[80]

## III.   CONCLUSION

For the reasons set forth above, I find that this Court has subject matter jurisdiction over the claims in this case.  I recommend that the Court DENY the Motion and Cross-Motion and that this matter proceed to trial.  This is a final master's report, and exceptions may be taken under Court of Chancery Rule 144.

Sincerely,

*/s/ Patricia W. Griffin*

Master Patricia W. Griffin

---

[79] Decl., §4.05(I).

[80] Because I conclude that summary judgment is not appropriate, I need not reach the remedies issues that I discussed in the Draft Report and the remainder of the issues discussed by the parties in the exceptions briefs.